1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8  TOMMIE LEE DAVIS,

9                          Plaintiff,

      v.
10

KING COUNTY,
11

12                          Defendant.

13

CASE NO. C16-383-RAJ-JPD

REPORT AND RECOMMENDATION

14        I.     INTRODUCTION AND SUMMARY CONCLUSION

15        Plaintiff is a prisoner at the King County Correctional Facility ("KCCF") in Seattle who

16  is proceeding *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action against defendant

17  King County. Dkt. 5.[1]  The Court appointed counsel from the Western District of Washington's

18  Pro Bono Panel to represent plaintiff in this action on June 1, 2016. Dkt. 23.  This matter comes

19  before the Court upon the parties' cross-motions for summary judgment.  Dkt. 39; Dkt. 45.

20  Having considered the parties' motions and related submissions, argument of counsel at the June

21

22        [1] Although plaintiff's Second Amended Complaint included a retaliation claim against
23  John Doe defendants, Dkt. 31 at 5, plaintiff agreed to dismiss that claim. Dkt. 40, Ex. A (email
    exchange between counsel); Dkt. 40 (Jacobsen-Watts Decl.) at ¶ 3.  As a result, King County is
    the sole remaining defendant in this case.

27, 2017 hearing, the governing law and the balance of the record, the Court recommends that King County's motion for summary judgment, Dkt. 39, be GRANTED, plaintiff's motion for partial summary judgment, Dkt. 45, be DENIED, and this action be DISMISSED with prejudice.

II.    BACKGROUND

A.  Plaintiff's Criminal Proceedings

Plaintiff Tommie Lee Davis was booked into the KCCF on December 28, 2015, and subsequently charged with assault in the first degree and unlawful possession of a firearm in the first degree under King County Superior Court cause number 15-1-04405-9SEA.  Dkt. 46 (Davis Decl.) at ¶ 1; Dkt. 42 (First Knightlinger Decl.) at ¶ 3.  Plaintiff was represented by criminal defense attorney Philip Mahoney throughout his criminal case, from arraignment through the trial and sentencing.  Dkt. 42 (First Knightlinger Decl.) at ¶ 4.  Plaintiff never moved to represent himself.  Dkt. 42 (First Knightlinger Decl.) at ¶ 8.  His jury trial started on March 10, 2016, and concluded on March 28, 2016.  Dkt. 46 (Davis Decl.) at ¶ 3.

Plaintiff asserts that while he was preparing for trial he wanted to access law library resources at KCCF, including court rules and discovery rules, because he lacked confidence in Mr. Mahoney.  Dkt. 46 (Davis Decl.) at ¶ 4.  The King County Prosecutor assigned to plaintiff's case, Stephanie Knightlinger, asserts that the State timely provided Mr. Mahoney with all discovery it had received prior to trial, including a latent fingerprint report that showed no latent fingerprints on the firearm at issue in plaintiff's case.  Dkt. 49 (Second Knightlinger Decl.) at ¶ 4.[2]  On March 4, 2016, plaintiff moved to dismiss the case before trial, alleging discovery

---

[2] In January 2016, the Seattle Police Latent Print Unit did fingerprint analysis on the relevant gun magazine and rounds, and determined that no comparison could be made to plaintiff.  Dkt. 46 (Davis Decl.) at ¶ 11.  Mr. Mahoney submitted a March 1, 2016 discovery demand to the government asking for the results of any fingerprint testing on the gun, Dkt. 41,

1    violations and lack of law library access.  *Id*. at ¶ 6.  The trial court denied plaintiff's motion

2    because "the State has timely provided discovery" and "the defendant's access to [the] law

3    library" was not a basis to dismiss the case.  Dkt. 49, Ex. A (order).  On March 15, 2016,

4    plaintiff personally moved to receive copies of the discovery that had been provided to his

5    counsel, Mr. Mahoney.  The court granted plaintiff's request.  Dkt. 42 (First Knightlinger Decl.)

6    at ¶ 8; Dkt. 45, Ex. G (order).[3]

7         During his opening statement, Mr. Mahoney told the jury that plaintiff was guilty of

8    unlawfully possessing a firearm, but not the assault.  Dkt. 42 (First Knightlinger Decl.) at ¶ 5.

9    On March 21, 2016, after receiving notice that the complaining witness was scheduled to testify

10   that morning, plaintiff moved to replace Mr. Mahoney with new counsel and for a two-week stay

11   of the proceedings.  Dkt. 42 (First Knightlinger Decl.) at ¶ 7.  The trial court denied his motion.

12   *Id.*  On March 23, 2016, plaintiff took the stand and testified that he unlawfully possessed the

13   firearm, but denied committing the assault.  *Id*. at ¶ 5.

14        At the conclusion of plaintiff's trial, on March 28, 2016, the jury acquitted plaintiff of the

15   assault and convicted him of unlawful possession of a firearm.  Dkt. 42 (First Knightlinger Decl.)

16   at ¶ 5.  In addition to the latent fingerprint analysis of the firearm, "a forensic scientist extracted a

17   major profile from swabs of the grip or backstrap of the firearm, which matched the DNA profile

18   from Mr. Davis' reference sample.  The DNA evidence was admitted at trial."  Dkt. 42 (First

19   ─────────────────

20   Ex. F, and the prosecutor directed him to the Bates-numbered pages that were responsive to his
     demand.  Dkt. 49 (Second Knightlinger Decl.) at ¶ 4.

21        [3] Specifically, the court ordered the Office of Public Defense to provide funding for
     transcription services and redact discovery so that plaintiff could have his own copy.  Dkt. 49

22   (Second Knightlinger Decl.) at ¶ 8; Dkt. 45, Ex. G (order).  To avoid delaying the trial, the King
     County Prosecutor's Office redacted a copy of discovery and transcribed the recorded

23   statements, and provided these materials to Mr. Mahoney to give to plaintiff.  Dkt. 49 (Second
     Knightlinger Decl.) at ¶ 8.  Thus, plaintiff did not personally receive a copy until six days into
     the trial on or around March 16, 2016.  Dkt. 46 (Davis Decl.) at ¶ 11.

1  Knightlinger Decl.) at ¶ 5.  At no point during the criminal trial did plaintiff move to represent

2  himself, and the only time he asked for new counsel to be appointed was on March 21, 2016.

3  Dkt. 42 (First Knightlinger Decl.) at ¶ 8.

4       On April 5, 2016, plaintiff drafted a motion for a new trial arguing that the prosecution

5  had suppressed evidence, and Mr. Mahoney filed the motion on plaintiff's behalf.  Dkt. 45, Ex. H

6  (Clerk's Minutes); Dkt. 46 (Davis Decl.) at ¶ 12.  At the sentencing hearing on June 10, 2016,

7  the trial court denied plaintiff's motion for a new trial, and plaintiff was sentenced to 95 months

8  in the Department of Corrections.  Dkt. 45, Ex. H; Dkt. 42 (First Knightlinger Decl.) at ¶ 6; Dkt.

9  46 (Davis Decl.) at ¶ 12.

10      B.  Plaintiff's Requests to Access the Legal Workstation at KCCF for the Criminal Case

11           KCCF does not have a law library.  Instead, KCCF has two computer workstations that

12  provide access to Westlaw Corrections, a legal research database.  Dkt. 41 (First Ogle Decl.) at ¶

13  2.[4]  KCCF's policy provides that *pro se* criminal and civil defendants have priority access to the

14  legal research workstations, and are assigned two-hour legal workstation sessions twice per

15  week. Dkt. 41, Ex. A at 2 (King County Department of Adult and Juvenile Detention ("DAJD")

16  Policy for the Legal Workstation).  By contrast, represented inmates have the lowest priority and

17  may be scheduled for "*no more than* a one (1), one (1) hour workstation session, per week," but

18  will only be "scheduled on a first come, first serve basis, and only as time permits" and staff

19  workload allows.  *Id.* (emphasis added).  *See also* Dkt. 45, Ex A (Inmate Handbook). The

20  number of *pro se* inmates at KCCF and the demand for legal workstations by represented

21  inmates at KCCF varies, and can result in a waiting list for represented inmates' use of the legal

22  _____

23         [4] Although neither party has submitted a declaration stating how many inmates are
typically incarcerated at the King County Jail, plaintiff asserts in his summary judgment motion
that "KCCF houses approximately 1200 inmates at any given time but provides only two
computer workstations."  Dkt. 45 at 2.  Defendant does not challenge this representation.

1   research workstations.  Dkt. 41 (First Ogle Decl.) at ¶ 4.  The first legal workstation sessions

2   start each day at 8:00 a.m. and the last session ends by 10:00 p.m.  *Id.* at ¶ 3.[5]

3        Plaintiff submitted at least nine kites requesting legal workstation access in the months

4   leading up to and during his March 2016 trial, when he was represented by Mr. Mahoney in his

5   criminal case.  Specifically, plaintiff filed kites on January 9, 2016, January 16, 2016, January

6   21, 2016, and February 5, 2016.  Dkt. 46 (Davis Decl.) at ¶ 5; Dkt. 8, Ex. 1 at 1-3.  When

7   plaintiff received no response to his initial kites from KCCF staff, plaintiff submitted a January

8   25, 2016 grievance concerning the lack of response and continued denial of access to the law

9   library.  Dkt. 46 (Davis Decl.) at ¶ 6; Dkt. 41, Ex. B (January 25, 2016 grievance).

10       Deborah Ogle is the KCCF administrative specialist whose duties include responding to

11  inmates' legal workstation service request kites, as well as scheduling inmates for legal

12  workstation time in accordance with DAJD policy.  Dkt. 41 (First Ogle Decl.). at ¶ 2.  On

13  February 8, 2016, Ms. Ogle responded to plaintiff's grievance by advising plaintiff that she had

14  received his kites, but "unfortunately there is a long waiting list to use the computer and a high

15  work-load prevents me from responding to each kite.  You will be notified when you have been

16  assigned." Dkt. 41, Ex. B at 3.[6]  Ms. Ogle placed plaintiff on the waitlist for workstation access

17  "due to the number of pro se inmates and KCCF staff workload."  Dkt. 41 (First Ogle Decl.) at ¶

18  5.

19

20

21          [5] There are thirty minute buffer periods between sessions to allow corrections officers to
22      transport inmates to and from the workstations and there are no work station sessions during
        officer shift changes and evening meal service.  *Id.*
            [6] Ms. Ogle's statement regarding the waiting list does not appear to be borne out by the
23      record of a substantial number of open and unscheduled time blocks that were available.  See
        DKt. 45, Ex. C at 2-3.

1    Plaintiff finally received one hour of legal workstation time on February 21, 2016 from

2    7:30 to 8:30 p.m.  Dkt. 46 (Davis Decl.) at ¶ 9.  Plaintiff subsequently filed five kites requesting

3    additional legal workstation access.  Dkt. 41 (First Ogle Decl.) at ¶ 7; Dkt. 45, Ex. B (Ms. Ogle's

4    records stating that she received five kites from plaintiff between February 29, 2016 and March

5    23, 2016).  Although plaintiff was notified by Ms. Ogle in late March that he was once again on

6    the waiting list for the workstations, he was never granted further access to the legal workstations

7    at KCCF until this civil case was initiated.  *Id.*; Dkt. 46 (Davis Decl.) at ¶ 10.

8    Although KCCF policy provides for appeals of grievance responses, plaintiff did not

9    appeal Ms. Ogle's response to his grievance.  Dkt. 41 (First Ogle Decl.) at ¶ 6.  On February 5,

10    2016, plaintiff filed a complaint with the Office of Civil Rights, but he was advised that office

11    could not help him.  Dkt. 46 (Davis Decl.) at ¶ 8.  Plaintiff asserts that the Office of Civil Rights

12    forwarded his complaint to the Ombudsman's Office, but when he called the Ombudsman's

13    Office he was advised that office also could not assist him.  *Id.*

14    C.  Plaintiff's Requests for *Pro Se* Access to the Legal Workstations for this Civil Action

15    Plaintiff submitted the complaint against King County on March 14, 2016, claiming that

16    his right to access the court was violated when KCCF continued to fail to assign him to legal

17    workstation sessions at KCCF.  Dkt. 1.  The Clerk's Office immediately assigned him a case

18    number.  Dkt. 3.[7]  As noted above, pro bono counsel was appointed to represent plaintiff in this

19    civil case on June 1, 2016, and therefore plaintiff was proceeding *pro se* prior to that date.  Dkt.

20    23.

21

22

23    [7] His initial complaint was docketed on March 16, 2016, after the Court granted plaintiff
permission to proceed *in forma pauperis*, Dkts. 5-6, although the Court directed plaintiff to file
an amended complaint before directing service of the complaint.  Dkt. 7; Dkt. 9.

On April 10 and 20, 2016, plaintiff sent kites stating that he was *pro se* in this civil action and requesting *pro se* priority access to the legal workstations. Dkt. 41 (First Ogle Decl.) at ¶ 8; Dkt. 41, Ex. C (kites). Plaintiff also provided KCCF with the correct civil case number. Ms. Ogle responded by sending plaintiff a form for him to provide information about his case so that KCCF staff could verify his *pro se* status. Dkt. 41 (First Ogle Decl.) at ¶ 8. On April 26, 2016, plaintiff also sent a kite requesting a *pro se* packet of materials, and asked to be scheduled for the law library. Dkt. 41, Ex. D. Ms. Ogle responded on May 3, 2016 that KCCF could "find no record of an order to proceed pro se on the cause # that you provided." *Id.* Emails exchanged between KCCF personnel show that on May 3, 2016, KCCF employees did not "see this case as even being filed yet." Dkt. 41, Ex. D at 4; Dkt. 41 (First Ogle Decl.) at ¶ 9.

Finally, on May 5, 2016, another KCCF employee advised Ms. Ogle that plaintiff "actually does have a case filed in U.S. District Court. For a case against King County Jail. I will place him on pro se list." Dkt. 41, Ex. D at 5. On May 6, 2016, Ms. Ogle delivered *pro se* supplies and a legal workstation schedule to plaintiff. Plaintiff was also scheduled for two-hour workstation sessions twice per week, which began on May 8, 2016. Dkt. 41 (First Ogle Decl.) at ¶ 10; Dkt. 41, Ex. E. *See also* Dkt. 45, Ex. B (Ogle's Records re: Plaintiff).

III.    <u>DISCUSSION</u>

A.    <u>Exhaustion of Administrative Remedies</u>

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It applies to both prisoners and pretrial detainees. *See*, *e.g.*, *Panaro v. City of North Las Vegas*, 432 F.3d 949, 950, 952 (9th Cir. 2005).

The exhaustion requirement was enacted to reduce the quantity and improve the quality of prisoner suits by allowing correctional officials the time and opportunity to first address complaints internally. *Porter*, 534 U.S. at 524-25. Corrective action taken in response to a grievance might, for example, "improve prison administration and satisfy the inmate, thereby obviating the need for litigation[,]" filter out frivolous claims, and, for cases ultimately brought to court, facilitate adjudication with an administrative record clarifying the contours of the controversy. *Id.* (citing *Booth v. Churner*, 532 U.S. 731, 737 (2001)).

Exhaustion under the PLRA must be "proper" and include compliance with a prison's grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). There is no question that PLRA exhaustion is mandatory and that unexhausted claims cannot be brought in court. *Jones*, 549 U.S. at 211-12. A failure to exhaust generally results in dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014). Failure to satisfy the PLRA exhaustion requirement is an affirmative defense as to which the defendant has the burden of proof.

Here, King County argues that plaintiff failed to exhaust his administrative remedies because plaintiff did not fully utilize the grievance procedures at KCCF in regards to his claims.[8]

---

[8] King County properly raised plaintiff's failure to exhaust his administrative remedies as an affirmative defense in the Answer. Dkt. 19 at 2. In the instant motion for summary judgment, King County raises the PLRA defense as a Rule 56 motion, rather than an unremunerated Rule 12(b) motion. Dkt. 39 at n.3. *See Albino v. Baca*, 747 F.3d 1162, 1168-69 (9th Cir.), *cert. denied sub nom. Scott v. Albino*, 135 S. Ct. 403 (2014).

Although plaintiff filed one inmate grievance on January 25, 2016 stating that his requests to use a legal workstation had not yet been granted, to which KCCF staff responded on February 8, 2016, plaintiff did not appeal the response to his grievance.  Dkt. 41 (First Ogle Decl.) at ¶ 6; Dkt. 41, Ex. B.  As noted above, Ms. Ogle responded that she had received plaintiff's kites and placed plaintiff on the waiting list for the workstation due to the number of *pro se* inmates with priority access as well as KCCF staff workload.  King County argues that because KCCF's operating procedures allow a right of appeal when a grievance is denied, and plaintiff did not appeal the denial of his grievance, he did not properly exhaust his administrative remedies as required under the PLRA.  Dkt. 39 at 6.  This case illustrates the need for exhaustion.  Although it might be easy to conclude that Ms. Ogle was not doing her job of assigning workstation sessions to represented inmates, plaintiff's failure to appeal meant that this did not come to the attention of her supervisors.

Plaintiff responds that the Grievance Appeal forms provide that the only permissible reasons to appeal the denial of a grievance is if (1) new information is available that was not considered at the time the grievance was submitted, or (2) possible error was committed by the original reviewer.  Dkt. 41, Ex. B at 3.  Plaintiff contends that Mr. Davis had no way of knowing that the factual basis for the denial of his grievance by Ms. Ogle was incorrect because there were plenty of time slots available until he had the opportunity to conduct pretrial discovery in this lawsuit.  Dkt. 50 at 6.  Plaintiff asserts that "[w]ithout a remedy from King County's grievance procedure, Mr. Davis then filed a Title VI complaint with King County Office of Civil Rights and Open Government ('OCR')."  *Id*.  Because filing such a complaint with OCR is the last remedy provided in King County's administrative procedure, plaintiff asserts that "he has

1    gone through all remedies, completed proper exhaustion, and met the RLPA's requirement

2    before he filed this case." *Id*. at 7.

3    A prisoner's failure to exhaust may be excused where he "took reasonable and

4    appropriate steps to exhaust his . . . claim and was precluded from exhausting, not through his

5    own fault but by a force outside his control." *Nunez v. Duncan,* 591 F.3d 1217, 1224 (9th Cir.

6    2010).[9]  Here, there is no evidence that plaintiff attempted to take the appropriate steps to

7    exhaust his claim but was precluded from doing so.  His explanation why he failed to appeal the

8    denial of his grievance does not withstand scrutiny.  Plaintiff's argument that "Mr. Davis had no

9    way to know that the King County actually committed an error" by denying his grievance is not

10   credible, in light of the fact that plaintiff continued to file numerous kites alleging that the

11   continued denial of access to the law library was wrongful, months after his grievance was

12   denied.  He also filed a Title VI complaint with King County OCR complaining about this issue.

13   *See* Dkt. 46 (Davis Decl.) at ¶¶ 5-8.  Plaintiff's actions establish that plaintiff was aware of the

14   jail grievance process, and was capable of appealing the denial of his grievance had he chosen to

15   do so.  Plaintiff has not provided a reason why his failure to properly exhaust the administrative

16   remedies available to him in this case should be excused.

17   Accordingly, the Court finds that King County has established that plaintiff has failed to

18   properly exhaust administrative remedies under the PLRA, and his complaint should be

19

20

21   _____

22        [9] In *Nunez,* a prisoner filed a grievance.  After the grievance was denied, the prisoner's
     diligent attempts to exhaust his administrative remedies were stymied due to the Warden's
     mistake in giving the prisoner the wrong regulation.  The Ninth Circuit Court of Appeals excused
23   the prisoner's failure to timely exhaust his remedies on the grounds "Nunez could not reasonably
     be expected to exhaust his administrative remedies without the [regulation] . . . and because
     Nunez timely took reasonable steps to obtain it."  *Id.* at 1225.

1    dismissed with prejudice.[10]  Because this case involves the important issue of whether

2    represented inmates at KCCF are being denied access to the courts as a result of the jail's

3    policies, however, the Court will also address the merits of plaintiff's claims.  As explained

4    below, plaintiff's constitutional claims lack merit.

5         B.    Summary Judgment Standard

6         Summary judgment "shall be entered forthwith if the pleadings, depositions, answers to

7    interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

8    genuine issue as to any material fact and that the moving party is entitled to a judgment as a

9    matter of law."  Fed. R. Civ. P. 56(c).  An issue of fact is "genuine" if it constitutes evidence

10   with which "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v.*

11   *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  That genuine issue of fact is "material" if it

12   "might affect the outcome of the suit under the governing law."  *Id.*

13        When applying these standards, the Court must view the evidence and draw reasonable

14   inferences in the light most favorable to the nonmoving party.  *See United States v. Johnson*

15   *Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006).  The moving party can carry its initial

16   burden by producing evidence that negates an essential element of the nonmoving party's claim,

17   or by establishing that the nonmoving party does not have enough evidence of an essential

18

19        [10] As noted above, the PLRA requires "[p]roper exhaustion," which "demands
20   compliance with an agency's deadlines and other critical procedural rules." *Ngo,* 548 U.S. at 90–
     91. "[F]iling an untimely or otherwise procedurally defective administrative grievance or appeal"
     does not satisfy the PLRA's exhaustion requirement.  *Id.* at 84.  As this Court has recognized in
21   other cases, the King County Jail grievance procedures require an inmate to submit a grievance
     within fourteen days of the incident that is being grieved.  *See Williams v. King County Jail,*
22   Case. No. 2:11-cv-0025-RSL-BAT, 2011 WL 4706893, *4 (W.D. Wash. Sept. 7, 2011).  Over a
     year has passed since the acts alleged in the complaint.  As it appears that the time to properly
23   exhaust administrative remedies has long passed, plaintiff's complaint should be dismissed with
     prejudice.

1    element to satisfy its burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,*

2    *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

3    Once this has occurred, the procedural burden shifts to the party opposing summary

4    judgment, who must go beyond the pleadings and affirmatively establish a genuine issue on the

5    merits of the case.  Fed. R. Civ. P. 56(e).  The nonmovant must do more than simply deny the

6    veracity of everything offered by the moving party or show a mere "metaphysical doubt as to the

7    material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

8    The mere existence of a scintilla of evidence in support of the plaintiff's position is likewise

9    insufficient to create a genuine factual dispute.  *Anderson*, 477 U.S. at 252.  To avoid summary

10   judgment, the nonmoving party must, in the words of Rule 56, "set forth specific facts showing

11   that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The nonmoving party's failure of

12   proof concerning an essential element of its case necessarily "renders all other facts immaterial,"

13   creating no genuine issue of fact and thereby entitling the moving party to summary judgment.

14   *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

15   C.    Legal Standard Under 42 U.S.C. § 1983

16   In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must set forth the

17   specific factual bases upon which he claims each defendant is liable.  *Aldabe v. Aldabe*, 606 F.2d

18   1089, 1092 (9th Cir. 1980).  Specifically, a plaintiff must show that (1) he suffered a violation of

19   rights protected by the Constitution or created by federal statute, and (2) the violation was

20   proximately caused by a person acting under color of state or federal law.  *See Crumpton v.*

21   *Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  To satisfy the second prong, a plaintiff must allege

22   facts showing how individually named defendants caused or personally participated in causing

23

the constitutional or statutory violations alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

A local government unit such as a county can be sued as a "person" under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 691 (1978). A plaintiff seeking to impose liability on a county under § 1983 must identify a municipal "policy" or "custom" that caused his or her injury. *Bryan County Comm'rs Bd. v. Brown,* 520 U.S. 397, 403 (1997) (citing *Monell,* 436 U.S. at 694). A mere conclusory allegation of constitutional harm is insufficient without specific, plausible facts to support it. *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009).

D.   Plaintiff Has Not Established a Genuine Issue of Material Fact to Preclude Summary Judgment on his Access to the Court Claims

1.   *Plaintiff's Fifth, Fourteenth, and Sixth Amendment Claims*

Plaintiff contends that at the time he filed his Second Amended Complaint, he believed his repeated requests to access the computer workstations between January and March 2016 were denied because two computer workstations were severely inadequate for the approximately 1,200 inmates housed at KCCF. Dkt. 31 at 3. However, through discovery in this civil action, plaintiff learned that the legal workstations were routinely available, and yet plaintiff was not granted access. Dkt. 45 at 6. Plaintiff asserts that King County's workstation schedule logs show that between January and March 2016, almost all evening sessions were available and there were also entire Mondays and Fridays when the workstations were not assigned to any inmates. *See* Dkt. 45 at 7.[11] Plaintiff asserts that "at least 80 sessions were available to use in the two months of January and February of 2016. Despite plenty of available spaces, King County did not assign any one of them to Mr. Davis until February 21, 2016." Dkt. 45 at 7. Similarly, although plenty

---

[11] As noted above, each workstation can be assigned for nine hours each day including half hour transition time. Dkt. 41 (First Ogle Decl.) at ¶ 3.

1   of spaces were available again in March 2016, as generally only two sessions were booked per

2   day, none of these sessions were given to plaintiff despite his five kites requesting access. *Id.*

3   Plaintiff created an illustrative summary chart to reflect the content of ninety-one KCCF

4   workstation schedule logs, which otherwise spread on 107 printed pages, for the time-period of

5   January 1, 2016 through March 31, 2016. Dkt. 51, Ex. C Update (Tenth Floor Computer

6   Workstation Schedule January 1, 2016 – March 31, 2016). *See also* Dkt. 51 (Li Decl.) at ¶ 5.[12]

7         As discussed above, it is undisputed that KCCF's legal research policy provides that *pro*

8   *se* criminal and civil defendants have priority access to the legal research workstations. The

9   policy provides that "criminal pro se inmates have first priority for scheduling of the legal

10  research workstation; with civil pro se inmates having secondary priority; and represented

11  inmates least priority, and as staff workload allows, and space is available." Dkt. 41, Ex. A at 2

12  (DAJD Policy for the Legal Workstations). Specifically, once an inmate's *pro se* status is

13  confirmed by Inmate Management Services, *pro se* inmates are provided two-hour legal

14  workstation sessions twice per week, and receive benefits such as access to the workstation

15  printer and *pro se* materials. *Id.* By contrast, inmates who already have legal representation

16  "receive no more than a one (1), one (1) hour workstation session, per week," and shall be

17  "scheduled on a first come, first serve basis, and only as time permits." *Id.* They also "[h]ave no

18  access to the workstation printer." *Id.* The Inmate Information Handbook further explains that

19  research sessions for "non-pro-se inmates (attorney represented) . . . *can take several weeks to*

20

---

21     [12] King County moved to strike the exhibits to plaintiff's motion for partial summary judgment because the exhibits were merely attached to plaintiff's brief, and plaintiff's counsel

22  failed to authenticate or lay any foundation through a declaration. Dkt. 47 at 3. King County's arguments are well-founded. However, pro bono counsel subsequently submitted a reply and

23  declaration rectifying these errors, Dkt. 51, and therefore King County's motion to strike the exhibits is DENIED. Pro bono counsel also corrected the errors identified by King County in Exhibit C, and prepared an updated summary chart.

1    *process and are not guaranteed due to the volume of requests received from pro se inmates and*

2    *jail operations priorities*."  Dkt. 45, Ex A (Inmate Handbook) (emphasis added).

3            Plaintiff contends his constitutional right of access to the courts under the due process

4    and equal protection clauses of the Fifth Amendment, as applicable to King County under the

5    Fourteenth Amendment, was violated by KCCF's policy.  Dkt. 31 at 4.  He asserts that to assure

6    adequate access to the courts, prison authorities must make law library facilities available to all

7    inmates for legal research regardless of whether an inmate is *pro se* or represented by counsel.

8    Dkt. 45 at 7.[13]  Plaintiff argues that King County's conduct in this case was particularly

9    egregious because KCCF denied him access when plenty of workstation sessions were available,

10   and arbitrarily failed to abide by its own "first come, first serve" policy by assigning earlier

11   sessions to inmates who requested legal workstation access later than him.  Dkt. 45 at 8.

12           Plaintiff contends that one hour of legal workstation time over a four month period was

13   neither meaningful waiting time nor reasonable access.  Dkt. 45 at 9 (citing *Lindquist v. Idaho*

14   *State Bd. of Corrections*, 776 F.2d 851, 858 (9th Cir. 1985) ( "The existence of an adequate law

15   library does not provide for meaningful access to the courts if the inmates are not allowed a

16   reasonable amount of time to use the library.")).  *See also Gluth v. Kangas,* 951 F.2d 1504, 1508

17   (9th Cir. 1991) (holding that unreasonable restrictions in a prisoner law library access policy,

18   including the prison arbitrarily denying requests for library turnouts despite space availability,

19   inmate requests for library access being lost or ignored, inmates being permitted insufficient time

20

21           [13] Plaintiff contends that King County's policy treats represented inmates' access to
     computer workstations as a deniable benefit or privilege, rather than part of the constitutional
22   right of access to the courts.  Dkt. 45 at 7-8 (citing Dkt. 45, Ex. D; Dkt. 45 Ex. E).  KCCF policy
     defines "privilege" as "a benefit or advantage granted by department administration.  A privilege
23   is something that is allowed, but that is not guaranteed by law."  Dkt. 45, Ex. E.  By contrast, a
     "right" is "an entitlement, freedom, or privilege to do something, as provided by law."

in the library, inmates receiving inadequate notice of library turnouts, the prison scheduling

turnouts so as to conflict with other activities, and inmates being arbitrarily removed from the

library, were preventing inmates from securing adequate access to the law library). Plaintiff

asserts that the workstation schedule logs for the time period of January 1, 2016 through March

31, 2016 show that KCCF staff failed to assign him to a workstation despite adequate space

availability, his kites seeking workstation access went unanswered by KCCF staff for weeks at a

time, his workstation time was unreasonably limited to "no more than" one hour per week, and

KCCF staff failed to abide by its own "first come, first serve" policy for represented inmates.

Finally, plaintiff asserts that because King County's policy automatically renews *pro se*

inmates' workstation sessions each month, it creates a backlog without scrutiny of whether the

*pro se* inmates actually need two sessions every week. Dkt. 45 at 14. Plaintiff argues that the

result of this backlog is to place represented prisoners in a position of having to choose between

assistance of counsel, and being able to access the legal workstation by relinquishing his right to

assistance of counsel. He asserts that this Hobson's choice violates his right to counsel under the

Sixth Amendment. *Id.*

> 2. *Plaintiff's Limited Access to the Legal Workstations When He Was Represented by Counsel Did Not Violate His Federal Constitutional Rights*

As a general proposition, the Court is sympathetic to plaintiff's plight. The undisputed

facts of this case establish that plaintiff submitted four kites requesting legal workstation access

in January and February 2016, as well as a grievance, before he even received a response from

KCCF staff acknowledging his requests. Dkt. 46 (Davis Decl.) at ¶¶ 5-6; Dkt. 8, Ex. 1 at 1-3;

Dkt. 41, Ex. B (January 25, 2016 grievance). Plaintiff was assigned a single one-hour legal

workstation session on February 21, 2016, but no further access until well after the conclusion of

1   his March 2016 criminal trial, despite his submission of at least four additional requests.  Dkt. 46

2   (Davis Decl.) at ¶ 10.

3   It is difficult to understand why plaintiff's requests for access were not granted,

4   especially in light of the evidence submitted by plaintiff suggesting that there were numerous

5   days and times when the legal workstations were available.  Indeed, it appears that Ms. Ogle was

6   routinely denying access when workstation time as actually available, contrary to what she was

7   telling plaintiff.  It also appears that KCCF could have granted plaintiff one one-hour session per

8   week without interfering with *pro se* inmates' rights or running afoul of KCCF's policy that

9   represented inmates receive "no more than" one hour of legal workstation access per week.  The

10  Court understands plaintiff's desire to actively participate in his defense by conducting his own

11  legal research at the jail so that he can better communicate with his appointed counsel.  However,

12  plaintiff's desire to access the legal workstation and conduct legal research, while understandable

13  and even commendable, is not a free standing constitutionally protected right under controlling

14  U.S. Supreme Court precedent and the law of this Circuit.

15  Prisoners and pretrial detainees have a fundamental constitutional right of "meaningful"

16  access to the courts.  *Lewis v. Casey*, 518 U.S. 343, 350 (1996).  That right is premised on the

17  Due Process Clause and assures inmates the opportunity to challenge violations of their

18  constitutional rights and unlawful convictions.  *Storseth v. Spellman*, 654 F.2d 1349, 1352 (9th

19  Cir. 1981).  *See also Hydrick v. Hunter*, 500 F.3d 978, 999-1000 (9th Cir. 2007) ("While the

20  Sixth Amendment, by its express language, protects those in criminal proceedings, the

21  Fourteenth Amendment protects all detainees against governmental interference in their right of

22  access to courts."), *vacated and remanded on other grounds by* 556 U.S. 1256 (2009).  In

23  *Bounds v. Smith*, the Supreme Court held that "the fundamental right of access to the courts

1    requires prison authorities to assist inmates in the preparation and filing of meaningful legal

2    papers by providing prisoners with adequate law libraries *or* adequate assistance from persons

3    trained in the law."  430 U.S. 817, 821 (1977) (emphasis added).  The Supreme Court in *Bounds*

4    affirmed a court order requiring North Carolina to make law library facilities available to

5    inmates, but stressed that such access was merely "one constitutionally acceptable method to

6    assure meaningful access to the courts," and that "our decision here . . . does not foreclose

7    alternative means to achieve that goal."  430 U.S. at 830.  The Supreme Court identified

8    "adequate assistance from persons trained in the law" as one of the constitutionally adequate

9    alternatives.  *Id*. at 831.

10        In *Lewis*, the Supreme Court reiterated that "*Bounds* did not create an abstract, free-

11    standing right to a law library or to legal assistance," but rather "the right that *Bounds*

12    acknowledged was the already well-established right of access to the courts."  *Lewis*, 518 U.S. at

13    351.  "In other words, prison law libraries and legal assistance programs are not ends in

14    themselves, but only the means for ensuring 'a reasonably adequate opportunity to present

15    claimed violations of fundamental constitutional rights to the courts.'"  *Id*.  The point is to

16    provide prisoners with the tools they "need in order to attack their sentences, directly or

17    collaterally, and in order to challenge the conditions of their confinement."  *Id.* at 355.  The

18    Supreme Court in *Lewis* held that "an inmate cannot establish relevant actual injury simply by

19    establishing that his prison's law library or legal assistance program is subpar in some theoretical

20    sense."  *Id.*  Rather, an inmate must demonstrate actual injury, *i.e.*, that the alleged shortcomings

21    in the library or legal assistance program hindered his efforts to pursue a legal claim.  *Id*.

22        Thus, under Supreme Court precedent, a criminal defendant who is represented by

23    counsel has no constitutional right of access to legal materials or a law library because the

1    provision of legal assistance at government expense satisfies the constitutional obligation to

2    provide meaningful access to the courts. *States v. Wilson*, 690 F.2d 1267, 1271-72 (9th Cir.

3    1982). When an inmate is provided adequate access, he may not reject the method of access

4    provided and insist on a method of access of his choosing. *Id.* Thus, it is prison or jail officials

5    and not the inmate who choose the manner in which the state fulfills its obligation to provide

6    access to courts. *Storseth*, 654 F.2d at 1353; *Lindquist*, 776 F.2d at 858 (providing that prison

7    officials necessarily regulate time for use of library facilitates; an inmate is not denied

8    meaningful access to the courts because he must wait for a turn). *See also United States v.*

9    *Robinson*, 913 F.2d 712, 717-18 (9th Cir. 1990) (noting that an incarcerated defendant who

10    proceeds *pro se* is not denied right of access to courts because access to his legal materials is

11    tailored to the perceived needs of prison management).

12        If plaintiff was not represented by legal counsel, the Court would agree that his

13    constitutional right to access to the courts had been denied by the limited access to the legal

14    workstation at KCCF plaintiff received during the weeks leading up to his criminal trial.[14]

15    However, *Bounds* requires "adequate law libraries or adequate assistance from persons trained in

16    the law," but not both. *See Lindquist*, 776 F.2d at 855. As discussed above, plaintiff was

17    represented by an experienced criminal defense attorney, Philip Mahoney, from his arraignment

18    through the criminal trial and sentencing. Dkt. 42 (First Knightlinger Decl.) at ¶ 4. Plaintiff also

19    never moved to represent himself. Dkt. 42 (First Knightlinger Decl.) at ¶ 8. The appointment of

20    counsel is a valid means of satisfying a pretrial detainee's right of access to the courts. *See*

21

22        _____

23        [14] There should be little doubt that Ms. Ogle's failure to assign represented inmates to available workstation sessions in this case, despite KCCF's policy, will be remembered when the Court is faced with *pro se* access issues or KCCF's boilerplate submissions regarding access policies in the future.

1    *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981) ("Appointed counsel, whether state or

2    court provided, offers a meaningful, and certainly the best, avenue of access to an indigent

3    inmate").  Indeed, the Ninth Circuit has repeatedly held that "if the state denies a prisoner

4    reasonable access to a law library, the state must provide that prisoner legal assistance."  *Gluth,*

5    951 F.2d at 1507 (citing *Toussaint v. McCarthy*, 801 F.2d 1080, 1110 (9th Cir. 1986)).

6    Accordingly, plaintiff's argument that KCCF's policy runs afoul of the Constitution by providing

7    different levels of legal workstation access for *pro se* and represented inmates lacks merit, and

8    King County is entitled to summary judgment on plaintiff's claims.

9            3.      *Plaintiff Was Granted Priority Access to the Legal Workstation When KCCF*
                     *Verified His* Pro Se *Status in this Civil Action*

10

11           As noted above, when plaintiff commenced this civil action in early March 2016, he was

12   *pro se* and therefore entitled to priority workstation access under KCCF's policies.  Plaintiff

13   submitted three separate kites in April 2016 explaining that he was *pro se* in this case and

14   requesting priority access to the legal workstations.  Dkt. 41 (First Ogle Decl.) at ¶ 8; Dkt. 41,

15   Ex. C (kites).  Ms. Ogle responded by sending a form asking plaintiff to provide information

16   about his case so that KCCF staff could verify his *pro se* status.  Dkt. 41 (First Ogle Decl.) at ¶ 8.

17   On May 3, 2016, Ms. Ogle advised plaintiff that KCCF could "find no record of an order to

18   proceed pro se on the cause # that you provided."  *Id.*  Emails exchanged between KCCF

19   personnel confirm that as of that date, KCCF employees did not "see this case as even being filed

20   yet." Dkt. 41, Ex. D at 4; Dkt. 41 (First Ogle Decl.) at ¶ 9.

21           This error was rectified on May 5, 2016, when another KCCF employee advised Ms.

22   Ogle that plaintiff "actually does have a case filed in U.S. District Court" and plaintiff was

23   placed on the *pro se* list. Dkt. 41, Ex. D at 5.  On May 6, 2016, Ms. Ogle delivered *pro se*

     supplies and a legal workstation schedule to plaintiff, and his automatically scheduled

REPORT AND RECOMMENDATION - 20

1    workstation access of four hours per week began on May 8, 2016. Dkt. 41 (First Ogle Decl.) at ¶

2    10; Dkt. 41, Ex. E. *See also* Dkt. 45, Ex. B (Ogle's Records re: Plaintiff). However, by this

3    time, it was too late to have an impact on his criminal trial.

4          E.    Plaintiff's Request for Relief, If Any, Is Barred by *Heck* or by *Monell*

5          King County contends that the doctrine of *Heck v. Humphrey* bars the Court from

6    reviewing plaintiff's claims of lack of access to the courts or ineffective assistance of counsel

7    with respect to his criminal case, as plaintiff requests immediate release from jail as a remedy in

8    his Second Amended complaint. Dkt. 39 at 9. KCCF asserts that "to the extent Mr. Davis seeks

9    relief from his prison sentence, he may not pursue a section 1983 claim against any defendant

10   based on actions which would 'render a conviction or sentence invalid' where that conviction has

11   not been reversed, expunged, or called into question by issuance of a writ of habeas corpus or on

12   direct appeal. *Id*. (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)). KCCF asserts that if

13   the Court were to review his claims as to his March 2016 conviction for unlawful possession of a

14   firearm, it would run afoul of the doctrine established in *Heck*. *Id*.

15         Plaintiff responds that his claims in this action are against King County for violation of

16   his constitutional right of access to the courts and Sixth Amendment rights to counsel during his

17   incarceration at KCCF, and do not relate to his criminal conviction and trial. Plaintiff asserts that

18   "wrongdoing at [the] jail facility hardly would directly invalidate his conviction," and their

19   relevance "is that such violation caused Mr. Davis' actual harm in the criminal procedure." *Id*.

20   Plaintiff asserts that he has simply asked for all relief that could compensate him, and

21   "immediate release of him from prison" is one of those forms of relief. *Id*.

22         KCCF is correct that relief from imprisonment is not a remedy available to plaintiff in

23   this case. To the extent that plaintiff's allegations of denial of access to the courts or ineffective

assistance of counsel during his criminal trial can be construed as seeking the invalidation of his

conviction, such claims would be barred by *Heck*.  Where a prisoner challenges the fact or

duration of his confinement, his sole federal remedy is a writ of habeas corpus, to which the

exhaustion requirement applies.  *Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973); *Young v.*

*Kenny*, 907 F.2d 874, 875 (9th Cir. 1990), cert. denied, 498 U.S. 1126 (1991).  In *Heck*, the

United States Supreme Court held that a claim under § 1983 that calls into question the

lawfulness of a plaintiff's conviction or confinement does not accrue "unless and until the

conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of

habeas corpus."  512 U.S. at 489.  Here, plaintiff makes no allegation or showing that his

conviction has been invalidated or impugned in any respect.  The more appropriate avenue for

such claims would be through a habeas action, unless or until his conviction is reversed.

To the extent that Mr. Davis is seeking injunctive relief, any such relief is barred by

*Monell v. Dep't of Soc. Servs. of City. of N.Y.,* 436 U.S. 658, 689 (1978).  As discussed above,

the policy adopted by KCCF is not unconstitutional under *Bounds* and *Lewis*.  The policy as

apparently implemented (or ignored) by Ms. Ogle is the problem.  However, Ms. Ogle was not

sued in her individual capacity.

## IV.    CONCLUSION

Accordingly, the Court recommends that King County's motion for summary judgment,

Dkt. 39, be GRANTED, plaintiff's motion for partial summary judgment, Dkt. 45, be DENIED,

and this matter be dismissed with prejudice.  A proposed order accompanies this Report and

Recommendation.

Although the undersigned is recommending the dismissal of this action, the Court is also

directing counsel for KCCF to provide a copy of this Report and Recommendation to Ms. Ogle

1    and her superiors at KCCF.  This case should never have been filed.  However, due to the

2    apparent disregard of KCCF policies regarding access for represented inmates, it was.  Indeed, as

3    a direct consequence of Ms. Ogle's actions, King County was sued in this case, which resulted in

4    plaintiff getting the very access (as a *pro se* litigant in this Court) that should have been provided

5    to him as a represented criminal defendant.  This has involved use of this Court's resources, use

6    of the King County Attorney's Office resources, use of pro bono counsel's resources, and

7    ironically, the use of Ms. Ogle's time and resources.  All of this could have been avoided if one

8    or more of the 80 unused time blocks (allegedly available on a first-come, first-serve basis) was

9    made available to plaintiff in the first instance.

10           While the actions of KCCF may satisfy the very low constitutional threshold, it also

11   represents an enormous waste of resources.  Moreover, it provides a blueprint for how to get

12   around the restrictions for the jailhouse lawyer seeking access: simply file a federal case on a *pro*

13   *se* basis and then Ms. Ogle will permit some of those unused blocks of time to be used in

14   accordance with the policy.  The inefficiency and waste created by such a perverse incentive is

15   deplorable.  Accordingly, counsel for KCCF is directed to provide a copy of this Report and

16   Recommendation to Ms. Ogle, her immediate superior, and the warden of the KCCF.

17           Objections to this Report and Recommendation, if any, should be filed with the Clerk and

18   served upon all parties to this suit by no later than **July 21, 2017**.  Failure to file objections

19   within the specified time may affect your right to appeal.  Objections should be noted for

20   consideration on the District Judge's motion calendar for the third Friday after they are filed.

21   Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no

22   timely objections are filed, the matter will be ready for consideration by the District Judge on

23   **July 28, 2017.**

1    This Report and Recommendation is not an appealable order. Thus, a notice of appeal

2    seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

3    assigned District Judge acts on this Report and Recommendation.

4    Dated this 30th day of June, 2017.

JAMES P. DONOHUE
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 24